UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROSALINDA RAMOS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TACOMA COMMUNITY COLLEGE, a municipal corporation in the State of Washington; MARLENE BOSANKO, an individual,<br><br>Defendants. | Case No. C06-5241 FDB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment seeking dismissal of Plaintiff's claims for wrongful termination of employment. Plaintiff alleges her employment termination was in violation of public policy for exercising her constitutional rights in violation of 42 U.S.C. § 1983, that she suffered retaliatory discharge in violation of public policy for making safety complaints, that Defendants violated 42 U.S.C. § 1983 by denying her of first amendment rights, due process rights and equal protection. Defendants assert that Plaintiff's claims are barred by a settlement agreement negotiated by her Union. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants

ORDER - 1

the motion of the Defendants and dismisses Plaintiff's case for the reasons stated below.

**INTRODUCTION AND BACKGROUND**

Plaintiff Rosalinda Ramos was a part-time art instructor for approximately twenty years at Tacoma Community College (TCC).  Plaintiff was officially terminated from her position on October 8, 2004.  The letter of termination stated that the action was being taken against Ms. Ramos due to her releasing confidential student information in violation of TCC policy on confidentiality of student records and the Family Education Rights to Privacy Act (FERPA).

Ms. Ramos notified her union representative, Bruce Sydow of the Tacoma Community College Federation of Teachers AFL-CIO Local 2196 (Union), of the termination action and requested representation in a grievance process.  The Union accepted the representation and filed a statement of grievance on behalf of Ms. Ramos.  As a result of the Union representation, a Resolution of Issues was reached and executed by TCC and Union representative Sydow.

The Resolution of Issues states that the Union, representing Rosalinda Ramos, and TCC desiring to resolve any and all matters pending between the parties and other issues relating to Ms. Ramos, employment with TCC, enter into the agreement under its terms and conditions.  The Resolution of Issues includes the following terms and conditions: that TCC retract its termination letter and pay Ms. Ramos for the remaining term of her contract with TCC, and agreed to provide a neutral letter of reference to any inquires about Ms. Ramos and to refrain from releasing any other information about Ms. Ramos' employment without her express authorization.  The Resolution of Issues states "[t]hat by entering into this agreement the Tacoma Community College Federation of Teachers representing Rosalinda Ramos releases the Tacoma Community College, its officers, agents, employees and agencies from all claims, causes of action, suits, civil or otherwise, known or unknown, based upon the actions taken in their official capacities that arise out of or relate to the grievance filed on Ms. Ramos' behalf dated October 28, 2004 and signed by Bruce Sydow, President, TCC-AFL-CIO Local #2196."  The Resolution of Issues further states that "[t]his

ORDER - 2

Agreement constitutes full and final resolution of all issues or claims that the Tacoma Community College Federation of Teachers on behalf of Ms. Ramos has or may have against the Tacoma Community College, its officers, agents, and employees as a result of the disciplinary action grieved on Ms. Ramos' behalf by the Tacoma Community College Federation of Teachers to the Tacoma Community College through the date of this Agreement is signed."

The Resolution of Issues agreement states that it shall become effective on the date of the final signature of the parties and/or their authorized representatives and constitutes the full agreement of the parties and resolution of all disputes that may exist between the parties except as specially noted within the agreement. The Resolution of Issues was executed by Bruce Sydow on behalf of Ms. Ramos on December 8, 2004.

Upon receipt of the Resolution of Issues on December 9, 2004, Ms. Ramos responded by letter to Bruce Sydow and the President of TCC stating that she did not agree to the terms contained in the agreement.

Pursuant to the Resolution of Issues agreement, TCC removed Ms. Ramos' termination letter and paid Ms. Ramos for the remainder of her contract term by direct deposit into her banking account. Ms. Ramos had these funds transferred to the trust account of her attorney pending this litigation.

Plaintiff Ramos then commenced the instant action. In addition to defendants TCC and Dean of Humanities, Marlene Bosanko, Plaintiff named Bruce Sydow as a defendant. Defendant Sydow moved for and was granted dismissal of the action against him. This Court found that Defendant Sydow actions were entirely consistent with the Union's duties and obligations as the exclusive bargaining representative of Ms. Ramos. The Court reasoned that a union representative cannot be held personally liable to a union member for acts performed on the union's behalf in the collective bargaining process. The Union had a duty to fairly represent Ms. Ramos in the grievance arising out of the collective bargaining agreement between the Union and TCC and Union is granted a

ORDER - 3

1  substantial amount of discretion in fulfilling this duty, including the authority to bind the employee to
2  terms of the grievance settlement without the employee's knowledge or consent.  See Order
3  Granting Defendant Bruce Sydow's Motion to Dismiss, filed July 19, 2006.

4  The remaining defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

6  The purpose of summary judgment is to identify and dispose of factually unsupported claims
7  and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary
8  judgment, the court is constrained to draw all inferences from the admissible evidence in the light
9  most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir.
10 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the
11 moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party
12 bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp.
13 v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party
14 must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio
15 Corp., 475 U.S. 574, 586-87 (1986).  A dispute as to a material fact is "genuine" if there is sufficient
16 evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty
17 Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party must present significant and probative
18 evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
19 1551, 1558 (9th Cir. 1991).  Affidavits made on personal knowledge and setting forth facts as would
20 be admissible at trial are evidence that a court may consider when determining whether a material
21 issue of fact exists. Fed. R. Civ. P. 56(e).  Legal memoranda and oral argument are not evidence and
22 do not create issues of fact. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).
23 Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material
24 fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); T.W. Elec. Serv. v.
25 Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987).  The nonmoving party must instead

26 ORDER - 4

set forth "significant probative evidence" in support.  T.W. Elec. Serv., at 630.  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.

## SETTLEMENT OF ISSUES AGREEMENT BARS SUIT

It has long been recognized that a union may waive a member's statutorily protected rights. Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 705 (1983);  Mahon v. N.L.R.B., 808 F.2d 1342, 1345 (9th Cir. 1987).  This includes the authority of a union to conclusively bind a employee to terms of a settlement agreement.  Mahon, at 1345.  A settlement agreement negotiated by union to resolve a grievance on an employee's behalf that unambiguously releases a state employer and state employees from all claims arising out of employee's employment is binding on the employee despite employee's claim that she did not sign the release and was not party to the release between union and employer. See Pilon v. University of Minnesota, 710 F.2d 466 (8th Cir. 1983).

The Resolution of Issues agreement unambiguously indicates that The Defendants are released from all claims, causes of action, suits, civil or otherwise, known or unknown, based upon the actions taken by Defendants in their official capacities that arise out of or relate to the termination of employment of Ms. Ramos.

A general release of Title VII claims does not ordinarily violate public policy.  To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII..  Stroman v. West Coast Grocery Co., 884 F.2d 458, 460-61 (9th Cir. 1989).  The interpretation and validity of a release of claims under Title VII is governed by federal law.  Stroman, at 461.  Where the agreement constitutes a release of all legal claims, the court must determine whether the waiver of Title VII was a voluntary, deliberate and informed waiver.  Id.  The determination of whether a waiver of Title VII was "voluntary, deliberate, and informed is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed.  Id.;  Salmeron v. United States, 724 F.2d 1357, 1362 (9th Cir. 1983).  Here, the

ORDER - 5

settlement was negotiated by Plaintiff's exclusive bargaining representative. The Union is due substantial discretion in fulfilling its legal duty to fairly represent an employee. The agreement struck between the Union and TCC resulted in a favorable achievement on behalf of Ms. Ramos that included rescission of the termination letter and full pay for the remainder of her contract term. This achievement in exchange for a release of all claims, including Title VII claims, is well within the proper exercise of the Union's discretion.

The Plaintiff may only pursue a claim against TCC after proving that his union breached its duty of fair representation. See Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1060 (9th Cir. 1989). As previously noted in the Court's Order dismissing Bruce Sydow from this action, the Union's decision to settle Ms. Ramos' grievance with TCC involved an exercise of judgment concerning the likelihood of success in the grievance proceedings versus the value of TCC's settlement offer. See Moore v. Bechtel Power Corp., 840 F.2d 634, 636 (9th Cir. 1988). The strategic decision to settle the dispute rather than press forward with the grievance was not merely procedural, but involved an appraisal of the relative benefits of the two courses of action. The Court accords great deference to such exercises of judgment, and will find that the Union breached its duty of fair representation only if Ms. Ramos showed that the Union's decision to settle was discriminatory, or made in bad faith. See Burkevich v. Air Line Pilots Ass'n, 894 F.2d 346, 349 (9th Cir. 1990). Ms. Ramos made no such showing and in fact has not brought suit against the Union.

Plaintiff's contemporaneous objections to the settlement do not render the Union's acceptance of it a bad faith act. When employees make their union the sole bargaining representative with the employer, they relinquish the right to control the settlement of their grievances. Unions are free to negotiate and accept settlements even without the grievants' approval. Shane v. Greyhound Lines, Inc., 868 F.2d at 1061; Scott v. Machinists Automotive Trades Dist. Lodge No. 190, 827 F.2d 589, 593 (9th Cir.1987).; Otero v. International Union of Elec., Radio and Machine Workers, 474 F.2d 3, 4 (9th Cir.1973).

ORDER - 6

**CONCLUSION**

For the reasons set forth above, Defendants are entitled to summary judgment of dismissal of Plaintiff's claims in their entirety.

ACCORDINGLY,

IT IS ORDERED:

Defendants' Motion for Summary Judgment [Dkt. #32] is **GRANTED**, and this case dismissed in its entirety.

DATED this 27th day of July, 2007.

/s/ Franklin D. Burgess

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 7